UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cr-00200-MOC-SCR

| | |
|---|---|
| KEITH ANTONIO BARNETT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. 115].

**I.    BACKGROUND**

*Pro se* Petitioner Keith Antonio Barnett ("Petitioner") participated in a drug-trafficking conspiracy with his cousin, Rodney Rhodes, in Gaston County, North Carolina, in 2016 and 2017. [Doc. 67 at ¶¶ 7-10, 12: Presentence Report (PSR)]. Quinton Brown, whose house was around the corner from Rhodes' house, supplied cocaine base, or crack cocaine, and powder cocaine to Petitioner and Rhodes. [Doc. 85 at 40-53: Trial Tr.]. Brown's house was around the from Rhodes' house. [Id. at 41-42]. On multiple occasions, Rhodes sent Petitioner to pick up drugs from Brown. [Id. at 45-47, 52]. Petitioner regularly sold crack cocaine and other drugs to customers and collected money for Rhodes on the street where Rhodes' house was located. [Id. at 87-89].

In September 2017, Petitioner gave his phone number to Perry Spencer, telling Spencer that he had some "drop," meaning "good drugs." [Id. at 13]. A few days later, Spencer called Petitioner and brought 6.83 grams of crack cocaine from him for $400.00. [Id. at 14-18; Doc. 67

at ¶ 7]. The purchase was a controlled buy that was recorded and monitored by police; Spencer was working as a confidential informant. [Id. at 11, 14-18].

On October 9, 2017, officers executed a search warrant on Rhodes' house, which was situated at the end of a dead-end street. [Doc. 84 at 88-90: Trial Tr.]. Several people were serving as lookouts on the street. [Id. at 88]. When officers approached the house, Petitioner ran from the front yard into the home's front door and immediately out of the side door. [Id. at 92-93]. He attempted to jump over a fence, but an officer confronted him, ordered him to lie down, and arrested him. [Id. at 95-97]. Police found two baggies of drugs on the other side of the fence from where Petitioner attempted to scale it. [Id. at 97, 99-101, 103-05, 109-10]. One of the bags contained smaller bags with powder cocaine, heroin, and marijuana. [Id. at 100]. The other bag contained 8.54 grams of crack cocaine. [Id. at 100, 103, 109-10]. Inside the house, police found 43.55 grams of powder cocaine and 116.5 grams of crack cocaine. [Id. at 113-16; Doc. 67 at ¶ 8]. Police also found a set of digital sales commonly used for weighing drugs and a box of plastic baggies of the same kind in which the found drugs were packaged. [Id. at 113-16].

Petitioner was arrested and charged in North Carolina state court with trafficking in cocaine. [Id. at 78-79, 82]. At his initial appearance in state court, Petitioner testified that "the dope" was his. [Id. at 79]. Petitioner testified that his cousin, Rhodes, "had nothing to do with it" and "[d]idn't know it was there." [Id.].

A federal grand jury indicted Petitioner, charging him with conspiracy to distribute and possess with intent to distribute 280 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846 (Count One); one count of possession with intent to distribute crack cocaine on September 22, 2017, in violation of 21 U.S.C. §§ 841(a), (b)(1)(C) (Count Two); and possession with intent to distribute 28 grams or more of crack cocaine and a detectable amount of

powder cocaine and heroin on October 9, 2017, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C) (Count Three).[1] [Doc. 54: Superseding Indictment].

On April 2, 2018, the Court appointed Attorney Randolph Marshall Lee to represent Petitioner. [4/2/2018 Docket Entry]. The Government provided discovery to Lee the same day. [See Doc. 120-1 at 1]. After rejecting "various plea offers," Petitioner opted to proceed to trial. [See Doc. 84 at 4]. Just before the trial started, Lee stated for the record that some of Petitioner's legal papers, including the indictment, various plea offers, and letters from Lee had not been returned to Petitioner after his transfer to Butner for a competency evaluation. [Id. at 4-5]. The Court directed counsel for the parties to provide Petitioner with hard copies of the missing documents. [Id. at 7].

At trial, Spencer, Brown, Travis Lewis (a neighbor), Gastonia Police Department Officer Chad Bingham, Gaston County Police Department Detective Allen Isenhour, and state prosecutor Zachary Holeve testified for the Government. Spencer and Bingham testified about Spencer's controlled purchase of crack cocaine for Petitioner in September 2017. [Doc. 84 at 17, 28-30; Doc. 85 at 11-18]. Bingham gave Spencer a recording device and $400 to purchase the crack cocaine. At trial, the Government played the video recording and presented photographs of that buy, photographs of the crack cocaine, and the actual crack cocaine. [Doc. 84 at 46, 49; Doc. 85 at 13; see Doc. 84 at 36]. The Government also presented the parties' stipulation that the substance was tested and determined to be 6.83 grams of crack cocaine. [Doc. 84 at 47-48].

Brown testified that he had trafficked crack cocaine with Petitioner in September and October of 2017 and that Petitioner and Rhodes trafficked drugs together. [Doc. 85 at 39-41]. Brown further testified that Petitioner frequented Rhodes' home, which was just around the corner

---

[1] The state charges were dismissed after Petitioner was federally indicted. [See Doc. 67 at ¶ 67].

from the house from which Brown sold drugs. [Id. at 41-42]. Brown supplied "dope" to Rhodes, and Petitioner sometimes accompanied Rhodes to pick up the drugs or would go to Brown's car to get the drugs for Rhodes. [Id. at 43, 45-47, 52]. Brown supplied approximately 16 ounces, or 450 grams, of crack cocaine to Rhodes during that period. [Id. at 48]. Brown saw Petitioner getting in and out of cars near Rhodes' house for short periods multiple times a day. [Id. at 50].

Travis Lewis, a neighbor to Rhodes, testified that he regularly saw Petitioner sell crack cocaine and collect money for Rhodes. [Doc. 85 at 85-87]. Lewis testified that he witnessed Petitioner selling crack cocaine to others for money at least 12 to 15 times. [Id. at 87-88]. On a few other occasions, Lewis saw Petitioner collect money that was owed for crack cocaine without providing more drugs. [Id. at 89].

Detective Isenhour helped execute the search warrant at Rhodes' home. [Doc. 84 at 84, 87-89]. Isenhour witnessed Petitioner attempt to flee and jump over the fence. Isenhour testified about the type and quantity of drugs that were found on the other side of the fence Petitioner attempted to scale and the drugs found inside the house. [Id. at 97, 99-100]. Rhodes, who had almost $2,600 cash in pocket, was also at the house that day and was arrested. [Id. at 119-20]. The parties stipulated to lab results regarding these drugs. [Id. at 116]. The stipulation read to the jury stated: "On October 9, 2017, 116.15 grams of cocaine base, 43.55 grams of powder cocaine, 6.33 grams of heroin, and that additionally 8.54 grams of cocaine base and 0.44 grams of powder cocaine … were recovered that day." [Id. at 116-17]. Isenhour testified that Petitioner originally gave a false name when officers questioned him. [Id. at 118-19].

After his arrest, Petitioner was detained at the Gaston County Jail. [Doc. 84 at 40]. In recorded calls Petitioner made from the Jail, he made threats against suspected informants. [Id. at 41-44, 123-25; see Doc. 73-3; Doc. 67 at ¶ 10].

Zachary Holeve, the state prosecutor who pursued the original state charges against Petitioner, testified that he was present at Petitioner's initial appearance in state court. [Doc. 84 at 78-79]. Holeve testified that at the hearing Petitioner said that "the drugs, the dope, was all his and 'my cousin [Rhodes] didn't know about it.'" [Id. at 79, 83].

After the Government rested its case, Petitioner decided to testify at trial. [Doc. 85 at 92, 116-17]. Petitioner testified that he was living at a Budget Inn in September and October of 2017. [Id. at 120]. He testified that he did not know Brown or Lewis, but that he saw Rhodes sell drugs to Spencer. [Id. at 121, 124-26, 129]. Petitioner admitted that he was on the video of the controlled buy with Spencer that the Government had showed the jury. [Id. at 125-26]. Petitioner testified that he went to Rhodes' house only three times in September and October 2017 and that Rhodes was only home on the last occasion when the police executed the search warrant. [Id. at 122, 131].

Petitioner further testified that, on the day of his arrest, a van and a car pulled up, he saw guns, and he ran toward the car thinking it was someone he knew. [Id. at 122, 133]. He testified that an officer in the car made Petitioner sit on the ground. [Id. at 123, 135]. Petitioner denied trying to flee through the house or attempting to jump the fence. [Id. at 124, 136]. He also denied ever having drugs or participating in a drug conspiracy with Rhodes. [Id. at 126-67]. Although Petitioner stated in a Jail call that he threw "bullets" by the fence, he testified that he had picked up bullets by the fence because someone had been shooting a gun, and "I didn't want to be questioned about a gun because I am a felon." [Id. at 136-37; see Doc. 84 at 124; Doc. 73-3 at 1]. Petitioner denied stating in state court that he was taking the charge for Rhodes, and he denied stating that in his Jail call. [Doc. 85 at 138-40]. Petitioner testified that his comment in the Jail call, "I done took the charge," was referring to another charge. [Id. at 281; see Doc. 73-3 at 3].

5

The jury convicted Petitioner on all three counts. [Doc. 59: Jury Verdict]. The jury specifically found that 280 grams or more of crack cocaine were reasonably attributable to Petitioner as part of the conspiracy. [Id. at 1]. The jury also found that Petitioner was responsible for possessing with intent to distribute 28 grams or more of crack cocaine in Count Three and a quantity of cocaine and heroin. [Id. at 2-3].

Before sentencing, a probation officer prepared a Presentence Report. [Doc. 67]. The probation officer recommended a base offense level of 30 based on the drug quantities involved. [Id. at ¶ 18]. The probation officer also recommended a two-level firearm enhancement, a two-level enhancement for credible threats of violence in the recorded Jail calls, a two-level drug premises enhancement, and a two-level enhancement for obstruction of justice, for a total offense level of 38. [Id. at ¶¶ 19-21, 24, 28]. With a criminal history category of V, Petitioner's recommended guidelines range was 360 months to life imprisonment. [Id. at ¶¶ 49, 86]. Petitioner's attorney argued that the evidence did not support the enhancements for possession of a dangerous weapon, making threats, and maintaining a drug premises. [Id. at 24-25].

At Petitioner's sentencing hearing, he confirmed that he had read the PSR, reviewed it with his attorney, and understood it. [Doc. 86 at 2-3: Sent. Tr.]. The Court sustained Petitioner's objection to the firearm enhancement and overruled the objections to the other enhancements. [Id. at 12-20, 34]. Based on a total offense level of 36, the Court determined that the advisory guidelines range was 292 to 365 months' imprisonment. [See id. at 20]. The Court, however, varied downward one level to 262 to 327 months, citing the amount by which the enhancements had increased the advisory guidelines range, and sentenced Petitioner to a term of imprisonment of 276 months on each count to run concurrently. [Id. at 37-39; Doc. 74 at 2: Judgment]. Judgment on Petitioner's conviction was entered on July 31, 2019. [Id.].

6

Petitioner appealed. [Doc. 76]. Petitioner on appeal filed a brief under Anders v. California, 386 U.S. 738 (1967), stating there were no meritorious grounds for appeal but questioning whether this Court erred by applying the two-level drug premises enhancement. United States v. Barnett, 48 F.4th 216 (2022). The Fourth Circuit affirmed, concluding that the evidence supported the district court's findings that Petitioner and Rhodes "dealt drugs out of [Rhodes'] home, where they stored and packaged drugs that [Petitioner] sold directly outside the home and along the street." Id. at 218. "The district court therefore did not clearly err in applying the premises enhancement." Id. On February 21, 2023, the Supreme Court denied Petitioner's petition for writ of certiorari. Barnett v. United States, 143 S.Ct. 823 (2023).

On February 19, 2024, Petitioner filed the instant § 2255 motion, asserting various claims of ineffective assistance of trial counsel. [Doc. 115; see id. at 12]. Petitioner claims he received ineffective assistance of counsel because (1) his attorney failed to object to his 276-month sentence, which exceeds the alleged statutory maximum sentence of 240 months under 21 U.S.C. § 841(b), because the Indictment did not include the drug quantity of 280 grams or more of cocaine base as an element of the offense; (2) his attorney failed to object to the aggregation of drug amounts from different drug sales to arrive at threshold quantity allowing a sentence greater than 20 year-statutory maximum; (3) his attorney failed to advance an "aiding and abetting" theory of culpability at trial and at sentencing; and (4) his attorney failed to obtain all Brady and Giglio discovery materials, forcing Petitioner to testify at trial without knowing the Government's "theory of culpability." [Id. at 4-5, 7-8]. For relief, Petitioner asks the Court to vacate his sentence, to prepare an amended PSR, and to resentence him. [Id. at 12]. On the Court's Order, the Government responded to Petitioner's motion. [Docs. 117, 120]. On June 27, 2024, Petitioner

replied, therein also purporting to assert several new claims of ineffective assistance of counsel.[2] [Doc. 125].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"

---

[2] The Court will deny these new claims of ineffective assistance of counsel, which do not relate back to Petitioner's original claims, as untimely. See Fed. R. Civ. P. 15(c); Farris v. United States, 333 F.3d 1211 (11th Cir. 2003). Petitioner had one year from the Supreme Court's denial of his petition for writ of certiorari on February 21, 2023, to raise these claims. See 28 U.S.C. § 1915(f)(1). The new claims in his reply were not filed until June 27, 2024, and were not submitted under penalty of perjury in any event, Rules Governing § 2255 Proceedings, Rule 2(b)(5), 28 U.S.C.A. foll. § 2244. [See Doc. 125].

8

Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)).  If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Discovery Materials

Petitioner contends that his attorney failed to obtain "all Brady and Giglio type discovery," that he was "not allowed to review the discovery material," and that he testified at trial without knowing the Government's "theory of culpability." [Doc. 115 at 8].  Petitioner claims that he was "forced … to rely on his own recollection of the events surrounding his association with Rodney Rhodes, and the errands which he performed for Rhodes, rather than the objective facts." [Id. at 11-12].

These allegations are too vague and conclusory to support a claim under § 2255.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cit. 2013) (holding it proper to dismiss § 2255 claims based on vague and conclusory allegations); Bey v. United States, No. RWT-11-3238, 2013 WL 715148, at *4 (D. Md. Feb. 25, 2013) (denying assertion that attorney failed to review and

share discovery as conclusory). Petitioner fails to identify any Brady or Giglio material applicable to his case or any such material of which his counsel was unaware or about which his counsel failed to advise him. Moreover, pursuant to this Court's Standing Discovery Order and the policy of the U.S. Attorney's Office for the Western District of North Carolina, the Government provides Brady and Giglio material to defense counsel when a defendant proceeds to trial. [7/2/2018 Docket Entry; see Doc. 105-2]. The Standard Discovery Order provides that, although attorneys have an obligation to comply with reasonable requests from a defendant for information, there is "no legal obligation" for counsel "to provide all the relevant discovery to [a] defendant." [Standard Disc. Order ¶ 24]. Petitioner's attorney was aware of and complied with this Discovery Order. [See Doc. 106]. Petitioner's attorney also noted that Petitioner had "in his possession" discovery provided by his former state attorney. [Id.]. The record also shows that defense counsel had received discovery and was familiar with the evidence in the case. [See, e.g., Doc. 84 at 51-52, 54, 58; Doc. 120-1]. Moreover, Petitioner was very involved in his own defense, even suggesting questions for his attorney to ask the witnesses at trial. [See Doc. 84 at 50, 53-54, 57-59, 64-65]. Finally, Petitioner's contention that he was unaware of the Government's "theory of culpability" when he testified at trial is meritless. Petitioner did not testify until after the Government had presented its evidence and rested its case. [Doc. 85 at 92, 119-20]. For these reasons, Petitioner has also failed to show deficient performance by his attorney relative to discovery materials.

Even if Petitioner had shown deficient performance, he has not alleged or shown prejudice. That is, Petitioner does not allege that but for counsel's performance he would not have proceeded to trial or that the outcome of the trial would have been different. Moreover, he does not request a new trial, but rather only resentencing. Because Petitioner has failed to show deficient performance or prejudice, the Court will deny this claim. See Strickland, 466 U.S. at 694; Kramer

v. United States, No. 3:14-cv-613, 2016 WL 55290, at *3 (W.D.N.C. Jan. 5, 2016) (dismissing ineffective assistance claim based on failure to demand or show discovery for failure to allege prejudice).

> **B.     Aiding and Abetting Theory and Minor Role Adjustment**

Petitioner claims that his attorney was ineffective for failing to advance a theory that Petitioner only aided and abetted Rhodes, "the principal offender," at trial or at sentencing. [Doc. 115 at 7]. Petitioner contends that, because he did not directly profit from the drug sales but was only compensated in other "various forms of payment," he was subject to a lower penalty under the guidelines for playing "a minor role" in the offense. [Id.]. These claims are without merit.

Conviction of aiding and abetting carries the same penalties as committing the offense as a principal. 18 U.S.C. § 2; see Doc. 85 at 205-06. Petitioner would have been no less culpable or subject to a lower punishment based on an aiding and abetting theory. The guidelines do allow for a two-level downward adjustment for a defendant who is "less culpable than most participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. §3B1.2, cmt. n.5. Determining a defendant's role in the offense is a fact-based determination in which a court should consider among other things: a defendant's understanding of the scope and structure of the criminal activity; the degree to which a defendant "participated in planning or organizing the criminal activity;" the defendant's exercise of decision-making authority or influence over such authority; "the nature and extent of the defendant's participation" in the crime, including the acts he performed and the "responsibility and discretion" he had in doing so; and "the degree to which the defendant stood to benefit from the criminal activity." Id. cmt. n.3(C). The defendant bears the burden to show he is entitled to a reduction for his role in the offense. See United States v. Harris, 882 F.2d 902, 907 (4th Cir. 1989). Petitioner claims his role was minor because he made

11

Case 3:18-cr-00200-MOC-SCR    Document 126    Filed 08/07/24    Page 11 of 15

no direct profit from the drug sales and merely acted at Rhodes' direction. [Id. at 7]. Petitioner admits, however, receiving payment for his participation and the evidence at trial showed that Petitioner solicited Spencer as a customer, negotiated in a phone call to sell Spencer crack cocaine, and sold Spencer seven grams of crack cocaine in September 2017. The evidence also showed that Petitioner frequented Rhodes' house and participated in numerous crack cocaine sales. Given this evidence, counsel was not ineffective for failing to seek a minor role adjustment. See Duarte-Pineda v. United States, 5:23-cv-240, 2023 WL 7201104, at *3 (E.D.N.C. Nov. 1, 2023) (rejecting argument that counsel was ineffective for failing to argue for a minor role reduction where the defendant had a significant role in several drug transactions and threatened a confidential source). Moreover, Petitioner failed to show that there is a reasonable probability that the Court would have granted the reduction.

Petitioner, therefore, has not shown deficient performance or prejudice on these claims. See Strickland, 466 U.S. at 687-88, 694. The Court will dismiss them.

### C. Drug Quantity

Petitioner claims his counsel was ineffective for failing to object to a sentence exceeding the statutory maximum sentence of 240 months where "the indictment improperly failed to include, as an element of the offenses, that 280 grams or more of cocaine-base (Crack) were involved." [Doc. 115 at 4]. Petitioner also claims that his attorney was ineffective for failing to object to the improper aggregation of drug quantities from different sales to reach a threshold quantity that triggers a greater statutory minimum penalty or increases the statutory maximum sentence. [Id. at 5]. Petitioner claims his sentence should have been capped at 20 years under 21 U.S.C. § 841(b)(1)(C). [Id.]. These claims are also meritless.

Count One of the First Superseding Indictment charged Petitioner with conspiracy to traffic 280 grams or more of crack cocaine, citing 21 U.S.C. § 841(b)(1)(A), which provides for a sentence of not "less than 10 years or more than life." [Doc. 54 at 1]. Count Three charged Petitioner with possession with intent to distribute 28 grams or more of crack cocaine, citing 21 U.S.C. § 841(b)(1)(B), which provides for a sentence of not "less than 5 years and not more than 40 years." [Id. at 2]. The jury made specific findings that the Government proved beyond a reasonable doubt that 280 grams or more of crack cocaine was attributable to Petitioner in Count One and 28 grams or more of crack cocaine was attributable to Petitioner in Count Three. [Doc. 59]. The Court sentenced Petitioner to a term of imprisonment of 276 months, well below the statutory maximum sentences for his offenses. An attorney's failure to raise a meritless issue is not ineffective assistance. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999); United States v. Anthony, 149 Fed. App'x 135, 136 (4th Cir. 2005) (rejecting claim "that counsel rendered ineffective assistance for failing to assert a meritless objection in district court"). The Court, therefore, will dismiss these claims.

Petitioner also argues that his attorney should have requested a jury instruction on a lesser-included offense that would have allowed the jury to find the substance was powder cocaine. [Doc. 115 at 4]. In this regard, Petitioner contends that "no chemist testified that the substance was cocaine-base, as distinguished from powder cocaine." [Id.]. This argument is also meritless. Testimony by a chemist was unnecessary. The parties stipulated that the substances were tested by an expert forensic chemist and the vast majority of the drugs involved were crack cocaine. [See Doc. 84 at 47-48, 109-11, 115-17; Doc. 50]. The jury specifically found that 280 grams or more of crack cocaine were reasonably attributable to Petitioner as part of the conspiracy. [Id. at 1]. The jury also found that Petitioner was responsible for possessing with intent to distribute 28 grams

13

or more of crack cocaine in Count Three and a quantity of cocaine and heroin. [Id. at 2-3]. Moreover, the special verdict form required the jury to determine whether Petitioner's offenses involved crack cocaine and, if so, the threshold quantity.[3] [Doc. 59]. As such, the Petitioner has failed to show deficient performance or prejudice from counsel's failure to request an instruction that was not supported by the evidence. See United States v. Craig, 358 Fed. App'x 446, 448-50 (4th Cir. 2009) (unpublished) (holding district court did not err by refusing to instruct jury that possession of powder cocaine was a lesser included offense in charge for possession of crack cocaine); United States v. Watkins, 375 Fed. App'x 319, 320 (4th Cir. 2010) (holding "the testimony on the distinguishing element must be sharply conflicting" to obtain an instruction for a lesser included offense). The Court will dismiss this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

---

[3] As to Count Three, the jury had the option to find Petitioner guilty or not guilty of possession with intent to distribute one or more controlled substances, and the jury found he was guilty of possessing with intent to distribute cocaine base, powder cocaine, and heroin. [Doc. 59 at 3].

14

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 115] is **DENIED** and **DISMISSED**.

**IT IS SO ORDERED**.

Signed: August 7, 2024

Max O. Cogburn Jr
United States District Judge